```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                  Civil No. 12-1598(DSD/TNL)
```

Ronald A. Vadnais, as Treasurer
of Swift County, Minnesota,
Individually and on behalf of
all others similarly situated and
Swift County,

      Plaintiff,

v.                                                          **ORDER**

Federal National Mortgage, also
known as Fannie Mae, and Federal Home
Loan Mortgage Corporation, also
known as Freddie Mac,

      Defendants.

Federal Housing Finance Agency, in
its Capacity as Conservator of
Fannie Mae and Freddie Mac,

      Intervenor.

    John C. Davis, Esq. and Law Office of John C. Davis, 623 Beard Street, Tallahassee, FL 32303, counsel for plaintiff.

    Michael A.F. Johnson, Esq. and Arnold & Porter, LLP, 555 Twelfth Street N.W., Washington, D.C. 20004, counsel for defendants.

This matter is before the court upon the motion to dismiss by defendant Federal National Mortgage Association (Fannie Mae), defendant Federal Home Loan Mortgage Corporation (Freddie Mac) and intervenor[1] Federal Housing Finance Agency (FHFA) (collectively,

---

[1] The FHFA's unopposed motion to intervene was granted on August 22, 2012. See ECF No. 18.

the Enterprises). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

This tax dispute arises from the Enterprises' nonpayment of deed transfer taxes in the state of Minnesota.

**The Enterprises**

Fannie Mae and Freddie Mac are federally-chartered, publicly-traded companies tasked with creating financial stability in the secondary, residential mortgage market. See 12 U.S.C. § 1716(1) (Fannie Mae); id. § 1451 Note (Freddie Mac). The FHFA is an independent federal agency that, following the 2008 subprime mortgage crisis, became conservator for Fannie Mae and Freddie Mac. First Am. Compl. ¶ 8. The Enterprises are tasked with the goal of "promot[ing] access to mortgage credit." 12 U.S.C. § 1716(4) (Fannie Mae); accord id. § 1451 Note (Freddie Mac). To this end, the Enterprises purchase mortgages originated by third-party lenders, combine them into investment securities and sell the pooled investments.

In establishing the Enterprises, Congress exempted the entities from certain taxes. The Fannie Mae charter (Exemption Statute) explains:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other

> security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2). The charters establishing Freddie Mac and the FHFA contain substantially-similar exemptions. See id. § 1452(e) ("[Freddie Mac] ... shall be exempt from all taxation now or hereafter imposed by any ... State, county, municipality, or local taxing authority ...."); id. § 4617(j)(2) ("[FHFA] ... shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority ....").[2]

**Deed Transfer Tax**

Minnesota law requires that a tax be "imposed on each deed or instrument by which any real property ... is granted, assigned, transferred, or otherwise conveyed." Minn. Stat. § 287.21, subdiv. 1(a). Individual counties, through their county treasurers and county auditors, are tasked with collecting the deed transfer tax and remitting 97% to the state of Minnesota. Id. §§ 287.25, 287.08, 287.29. The party conveying the property is responsible for paying the deed transfer tax. Id. § 287.24, subdiv. 1.

---

[2] Given the substantial similarity among these provisions, the court, unless otherwise noted, cites only the relevant statutes for Fannie Mae.

Properties sold in Hennepin and Ramsey counties are also subject to a 0.0001% "environmental response fund" surcharge. Id. §§ 383A.80, 383B.80. An exception to the deed transfer tax exists when "the United States or any agency or instrumentality thereof is the grantor, assignor, transferor, conveyor, grantee or assignee" of the property. Id. § 287.22(6).

The Enterprises do not pay the deed transfer tax when conveying properties in the state of Minnesota. First Am. Compl. ¶ 14. The Enterprises argue that they need not remit payment because (1) the Exemption Statute establishes an exemption from all state taxation and (2) they are instrumentalities of the United States, and thus are exempt under Minnesota Statutes § 287.22(6).

On October 5, 2012, plaintiff Ronald A. Vadnais, as Treasurer of Swift County, Minnesota, filed a first amended class action complaint, seeking a declaratory judgment that the Enterprises violated (1) Minnesota Statutes § 287.21 by failing to pay deed transfer taxes when conveying property in the state of Minnesota and (2) Minnesota Statutes §§ 383A.80 and 383B.80 by failing to pay the environmental surcharge when conveying property in Hennepin and Ramsey counties. Vadnais also alleges a claim for unjust enrichment.

On October 19, 2012, the Enterprises filed a motion to dismiss. Oral argument was held on November 30, 2012, whereupon

4

the court took the motion under advisement.[3]  Subsequent to oral argument, the Enterprises received oral permission from the court to file a notice of supplemental authority.[4]  See ECF No. 52. Without receiving permission from the court, Vadnais filed a response to the Enterprises' notice of supplemental authority. See ECF No. 53.  Thereafter, on March 8, 2013, Vadnais filed (1) a motion for class certification, (2) a motion for partial summary judgment and (3) a request to stay consideration of the motion to dismiss pending briefing of the motion for partial summary judgment.  See ECF Nos. 54, 58, 63.[5]  The court now considers the motion to dismiss.

---

[3] On August 24, 2012, a similar putative class action was filed on behalf of Hennepin County and all similarly-situated Minnesota counties.  Hennepin County sought nearly identical relief, named the same Enterprise defendants, and, as a result, filed a motion to consolidate the matters.  To limit costs and avoid redundant arguments, the court held a combined oral argument on the Enterprises' motions to dismiss.  Because additional arguments and memoranda were advanced in this matter subsequent to oral argument, the court denied the motion to consolidate. See Hennepin County v. Fed. Nat'l Mortg. Ass'n, No. 12-cv-2075 (DSD/TNL), slip op. at 4 n.2 (D. Minn. Mar. 27, 2013).

[4] Complying with the court's request, the Enterprises provided only case citations and included no legal analysis of the supplemental authority.

[5] Because the court grants the Enterprises' motion to dismiss, Vadnais's motions are denied as moot.

5

**DISCUSSION**

## I. Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action are not sufficient to state a claim." Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

## II. Deed Transfer Tax

The Enterprises argue that the "all taxation" clause in the Exemption Statute indicates that they are exempt from paying the deed transfer tax. In response, Vadnais argues that the Exemption

Statute exempts the Enterprises only from direct taxation. The court disagrees and finds that analysis of the text, caselaw and policy supports the interpretation advanced by the Enterprises.[6]

**A.   Textual Analysis**

"[A]s with any question of statutory interpretation, the court begins its analysis with the plain language of the statute ...." Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., 651 F.3d 857, 862 (8th Cir. 2011) (citation omitted). In relevant part, the Exemption Statute states that the Enterprises "shall be exempt from all taxation." 12 U.S.C. § 1723a(c)(2).

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as having their ordinary, contemporary, common meaning."[7] United States v. Friedrich, 402 F.3d 842, 845 (8th Cir. 2005) (citation omitted). Use of the word "shall" expresses Congress's intent that the exemption is mandatory. See LeMay v. U.S. Postal Serv., 450 F.3d

---

[6] In reaching such a conclusion, the court need not address the Enterprises' argument that Minnesota Statutes § 287.22(6) exempts them from paying the deed transfer tax.

[7] Vadnais argues that after United States v. Wells Fargo Bank, 485 U.S. 351 (1988), "all taxation" has acquired a "technical legal sense," dictating that the phrase mean "all [direct] taxation." Pl.'s Mem. Opp'n 15. The court disagrees and notes that "[t]he everyday understanding ... should count for a lot here, for the statutes in play do not define the term, and so remit us to regular usage to see what Congress probably meant." Lopez v. Gonzales, 549 U.S. 47, 53 (2006) (citations omitted). Moreover, even if the court were to agree with Vadnais's argument, as discussed below, Wells Fargo is inapposite.

797, 799 (8th Cir. 2006). Moreover, the Exemption Statute uses the inclusive adjective "all," evidencing an intent to permit no unenunciated exceptions. See Sander v. Alexander Richardson Invs., 334 F.3d 712, 716 (8th Cir. 2003) ("In short, 'all' means all." (citation and internal quotation marks omitted)); Trs. of Iron Workers Local 473 Pension Trust v. Allied Prods., 872 F.2d 208, 213 (7th Cir. 1989) ("Congress knew the difference between all, substantially all, and virtually all; and it opted for the unqualified all [when drafting the statute]." (internal quotation marks omitted)). In sum, the plain language of the Exemption Statute unambiguously supports the Enterprises' interpretation.

Moreover, the canon expressio unius, or the principle that the expression of one thing excludes others not expressed, also supports the Enterprises. Indeed, the Exemption Statute contains an exception, explaining that "any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed."[8]  12

---

[8] In the alternative, Vadnais argues that this exception language encompasses a carve-out for the deed transfer tax. Specifically, Vadnais argues that the exception language contains no words of limitation such as "direct" or "indirect" tax and does not specifically exclude excise taxes, such as the deed transfer tax. Minnesota Statutes § 287.21(1)(a), however, provides that the deed transfer tax is "imposed on each deed or instrument by which any real property ... is granted, assigned, transferred, or otherwise conveyed." In other words, the deed transfer tax only applies when land is conveyed and is not a tax levied on the "real property" itself. See Fannie Mae v. Hamer, No. 12 C 50230, 2013 WL 591979, at *4 (N.D. Ill. Feb. 13, 2013) ("The primary issue in this
(continued...)

U.S.C. § 1723a(c)(2). In other words, Congress contemplated exceptions to the "all taxation" language, but declined to include a carve-out for the deed transfer tax. See United States v. Johnson, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others."). As such, a textual analysis of the Exemption Statute supports the Enterprises' interpretation. See Nicolai v. Fed. Housing Fin. Agency, No. 8:12-cv-1335, 2013 WL 899967, at *3 (M.D. Fla. Feb. 13, 2013) ("The language of the Exemption Statutes is unambiguous."); Hertel v. Bank of Am., No. 1:11-CV-757, 2012 WL 4127869, at *4 (W.D. Mich. Sept. 18, 2012) ("Under the plain interpretation of these statutes, the Enterprise[s] ... are exempt from the [deed transfer tax]."); Hager v. Fed. Nat'l Mortg. Ass'n, 882 F. Supp. 2d 107, 111 (D.D.C. 2012) (same).

### B. Caselaw

Despite the clear and unambiguous text of the Exemption Statute, Vadnais argues that United States v. Wells Fargo Bank, 485 U.S. 351 (1988), requires that the court read "all taxation" to

---

[8](...continued)
case is determining what Congress meant when it wrote into the Enterprises' charters that they were 'exempt from all taxation' from state and county governments, *absent exceptions not relevant here*." (emphasis added)); Hager v. Fed. Nat'l Mortg. Ass'n, 882 F. Supp. 2d 107, 111-112 (D.D.C. 2012) (describing carve out as "a single, narrow exception [that] all agree is inapplicable"). Therefore, the court finds that the "real property" exception contained in the Exemption Statute does not encompass the Minnesota deed transfer tax.

mean "all direct taxation." In <u>Wells Fargo</u>, the Court analyzed whether tax-free obligations, termed "Project Notes," issued by state and local housing authorities during the 1930s housing shortage, were exempt from federal estate tax. <u>Id.</u> at 353. In relevant part, the statute stated that "[Project Notes], including interest thereon, ... shall be exempt from all taxation." <u>Id.</u> at 355 (alterations in original) (quoting 42 U.S.C. § 1437i(b)) (internal quotation marks omitted). In analyzing the statute, the Court explained:

> Well before the Housing Act was passed, *an exemption of property* from all taxation had an understood meaning: the property was exempt from *direct* taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed. Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself. The former has historically been permitted even where the latter has been constitutionally or statutorily forbidden. The estate tax is a form of excise tax.

<u>Id.</u> (first emphasis added) (citations omitted). The Court held that the Project Notes were subject to the estate tax, concluding that the "all taxation" language applied only to direct and not excise taxes. <u>Id.</u> at 359. Vadnais relies on this rationale, and argues that Congress, aware of the distinction between a direct and

excise tax,[9] would have included an explicit exception in the Exemption Statute for excise taxes if it had so intended.

A majority of courts faced with the same argument, however, decline to accord the weight that Vadnais places on Wells Fargo. Instead, these courts explain that Wells Fargo enunciates a rule that applies only for tax-exempt properties. See, e.g., Nicolai, 2013 WL 899967, at *4 (finding that the "operative word in [Wells Fargo] is 'property'"); Fannie Mae v. Hamer, No. 12 C 50230, 2013 WL 591979, at *6 (N.D. Ill. Feb. 13, 2013) ("Wells Fargo deals only with how to interpret a tax exemption on property using cases that had only considered the taxable status of exempt property."); Hertel, 2012 WL 4127869, at *5 (same); Hager, 882 F. Supp. 2d at 112 (same). But see Oakland Cnty. v. Fed. Housing Fin. Agency, 871 F. Supp. 2d 662, 669 (E.D. Mich. 2012) ("Wells Fargo is dispositive .... [T]he exemptions here exempt Defendants from 'all taxation.'"), interlocutory app. granted, No. 12-2135 (6th Cir. Sept. 5, 2012).

Indeed, to hold otherwise would contravene the Court's decision in Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95 (1941). In Bismarck Lumber, the Court examined whether North Dakota could impose a state sales tax on the Federal Land

---

[9] The parties do not dispute that the deed transfer tax is an excise tax. See United States v. 4,432 Mastercases of Cigarettes, 448 F.3d 1168, 1185 (9th Cir. 2006) ("The quintessential excise tax in our country is the sales tax.").

11

Bank of St. Paul. Id. at 98. In relevant part, section 26 of the Federal Farm Loan Act stated that "every Federal land bank ... including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation ...." Id. at 97 n.1 (citation omitted). In determining that the bank was exempt from the state sales tax, the Court stated that "[t]he unqualified term 'taxation' used in section 26 clearly encompasses within its scope a sales tax such as the instant one." Id. at 99. Just as the sales tax in question in Bismarck Lumber was a tax on the transfer of goods, so too is the deed transfer tax, which imposes a tax on the transfer of property in the state of Minnesota.

In an attempt to distinguish Bismarck Lumber, Hennepin County argues that its holding applies only when the entity in question, such as the Federal Land Bank of St. Paul, is a federal instrumentality. Bismarck Lumber, however, was not premised on the bank's status as an instrumentality, but rather on the text of section 26 of the Federal Farm Loan Act.[10] Moreover, Wells Fargo,

---

[10] Admittedly, Bismarck Lumber noted that the Federal Land Bank of St. Paul was a federal instrumentality. See 314 U.S. at 102 ("[Federal land banks] are instrumentalities of the federal government ...." (citation and internal quotation marks omitted)). This discussion, however, was only germane to the Court's inquiry as to whether "Congress [could] constitutionally immunize from state taxation activities in furtherance of the lending functions of federal land banks." Id. at 99. As such, the bank's instrumentality status was not relevant to determining whether section 26 of the Federal Farm Loan Act immunized federal land
(continued...)

decided nearly fifty years after <u>Bismarck Lumber</u>, never cites to or purports to distinguish <u>Bismarck Lumber</u>. Had the Court intended such a result, it surely would have noted its intention. As a result, the court concludes that <u>Wells Fargo</u> did not modify the holding from <u>Bismarck Lumber</u>. Rather, it addressed a different issue, namely whether a property, as opposed to an entity, was exempt from taxation. As such, the relevant inquiry is whether the Exemption Statute exempts the Enterprises, as in <u>Bismarck Lumber</u>, or the property, as in <u>Wells Fargo</u>.

Here, the Exemption Statute, much like section 26 of the Federal Farm Loan Act, exempts entities - not property - from taxation. <u>See</u> 12 U.S.C. § 1723a(c)(2) ("The corporation ... shall be exempt from all taxation ...."). As a result, the court concludes that <u>Bismarck Lumber</u> controls and determines that the Enterprises are exempt from the deed transfer tax.

**C. Policy**

Such a conclusion is supported by Congress's stated intent for creating the Enterprises. As already discussed, the Enterprises were formed with the goal of stabilizing the secondary mortgage market, "and one of the ways Congress attempted to accomplish that was to make operating in those markets somewhat less expensive." <u>Hamer</u>, 2013 WL 591979, at *6 (collecting cases). Under Vadnais's

---

[10](...continued)
banks from North Dakota's state sales tax.

interpretation, the tax exemption would be almost meaningless, as only three forms of direct taxes exist: taxes upon real property; taxes upon personal property; and capitations, which are "taxes paid by every person, without regard to property, profession, or any other circumstance." Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2598-99 (2012) (citation and internal quotation marks omitted). The Exemption Statute already excludes taxes on "real property," which would leave personal property and capitations as the only direct taxes exempted by the "all taxation" language. As the Hager court noted, such a construction

> would lead to near absurdity. It would leave the statutory provisions, so sweeping in their language, virtually meaningless .... The entities' day-to-day operations would be subject to the full panoply of taxation. If that were all Congress meant to accomplish, surely it would have done so with a narrowly phrased provision rather than the sweeping "all taxation" formulation it chose here.

882 F. Supp. 2d at 113.

In sum, the court concludes that the Exemption Statute exempts the Enterprises from paying the deed transfer tax. Therefore, the court declines to enter a declaratory judgment in favor of Vadnais, and dismissal of the claim under Minnesota Statutes § 287.21 is warranted.[11]

---

[11] As a result, Vadnais's claims under Minnesota Statutes §§ 383A.80 and 383B.80 also fail.

**III.  Unjust Enrichment**

A claim for unjust enrichment requires the plaintiff to show that "another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001) (citation omitted).  As already discussed, the Enterprises were entitled to an exemption from the deed transfer tax.  Therefore, Vadnais's claim for unjust enrichment fails, and dismissal is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.  Defendants' motion to dismiss [ECF No. 44] is granted;

2.  Plaintiff's motion for class certification [ECF No. 54] is denied as moot;

3.  Plaintiff's motion for partial summary judgment [ECF No. 58] is denied as moot; and

4.  Plaintiff's motion to stay consideration of defendants' motion to dismiss [ECF No. 63] is denied as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 27, 2013

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court