```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 12-1598(DSD/TNL)
```

Ronald A. Vadnais, as Treasurer
of Swift County, Minnesota,
Individually and on behalf of
all others similarly situated and
Swift County,

       Plaintiff,

v.                                                    **ORDER**

Federal National Mortgage, also
known as Fannie Mae, and Federal Home
Loan Mortgage Corporation, also
known as Freddie Mac,

       Defendants.

Federal Housing Finance Agency, in
its Capacity as Conservator of
Fannie Mae and Freddie Mac,

       Intervenor.

    John C. Davis, Esq. and Law Office of John C. Davis, 623 Beard Street, Tallahassee, FL 32303, counsel for plaintiff.

    Michael A.F. Johnson, Esq. and Arnold & Porter, LLP, 555 Twelfth Street N.W., Washington, D.C. 20004, counsel for defendants.

This matter is before the court upon the motions to alter or amend the judgment and to file a second amended complaint by plaintiffs Ronald A. Vadnais, as Treasurer of Swift County, and Swift County (collectively, Vadnais). Based on a review of the file, record and proceedings herein, and for the following reasons, the court denies the motions.

**BACKGROUND**

The background of this action is fully set out in the court's March 27, 2013, order, and the court recites only those facts necessary for disposition of the instant motions. On October 5, 2012, Vadnais filed a first amended class-action complaint, seeking a declaration that defendant Federal National Mortgage Association (Fannie Mae), defendant Federal Home Loan Mortgage Corporation (Freddie Mac) and intervenor[1] Federal Housing Finance Agency (FHFA) (collectively, the Enterprises) violated Minnesota Statutes by failing to pay deed transfer taxes when conveying property in the state of Minnesota. Vadnais also alleged a claim for unjust enrichment.

On November 30, 2012, the court held oral argument on the Enterprises' motion to dismiss. Subsequent to oral argument, with the motion to dismiss under advisement, Vadnais filed (1) a motion for class certification, (2) a motion for partial summary judgment[2] and (3) a request to stay consideration of the motion to dismiss pending briefing of the motion for partial summary judgment. See ECF Nos. 54, 58, 63.

---

[1] The FHFA's unopposed motion to intervene was granted on August 22, 2012. See ECF No. 18.

[2] The court notes that the memorandum in support of partial summary judgment reads like a surreply. Only five pages of the thirty-two page memorandum address Vadnais's constitutional arguments. The remainder of the memorandum is more accurately characterized as a response to the Enterprises' reply memorandum.

On March 27, 2013, the court granted the Enterprises' motion to dismiss and declined to address Vandais's post-hearing motions. In response, on April 4, 2013, Vadnais filed a motion to alter or amend the judgment under Rule 59(e) and a motion to file a second amended complaint.

**DISCUSSION**

**I. Rule 59(e)**

"A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e) ...." United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (citation omitted). "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." Id. (citation and internal quotation marks omitted). In other words, "[s]uch motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." Id. (citation and internal quotation marks omitted).

Vadnais argues that the court committed manifest error by failing to analyze the constitutionality of the Enterprises' charter exemptions.[3] Even if this constitutional argument was

---

[3] Fannie Mae's charter exemption explains that it "shall be exempt from all taxation now or hereafter imposed by any State,
(continued...)

3

properly raised prior to entry of judgment,[4] the claim fails on the merits.

Vadnais bases the constitutional claim on the Enterprises' private corporate status. Specifically, Vadnais argues that (1) the Enterprises are not federal instrumentalities and thus are not entitled to inherent constitutional immunity and (2) the charter exemptions were not validly enacted pursuant to any of Congress's constitutionally-enumerated powers. In response, the Enterprises

---

[3](...continued)
territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority." 12 U.S.C. § 1723a(c)(2). The charters establishing Freddie Mac and the FHFA contain substantially-similar exemptions. See id. § 1452(e) ("[Freddie Mac] ... shall be exempt from all taxation now or hereafter imposed by any ... State, county, municipality, or local taxing authority ...."); id. § 4617(j)(2) ("[FHFA] ... shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority ....").

[4] Vadnais's memorandum in opposition to the motion to dismiss makes passing reference to principles of federalism and argues that Hager v. Federal National Mortgage Ass'n, 882 F. Supp. 2d 107 (D.D.C. 2012), and Hertel v. Bank of America N.A., 897 F. Supp. 2d 579 (W.D. Mich. 2012), were improperly decided because they ignore the "Supreme Court's modern and evolving understanding of competing constitutional sovereignties." Pls.' Resp. Opp'n M. Dismiss 25; see id. 6-8, 24-25. An obtuse reference in the memorandum in opposition to the motion to dismiss, coupled with no meaningful discussion at oral argument, see Tr. 23:17-31:8, does not put the court on notice of a litigant's intent to challenge the constitutionality of a federal statute. Not until filing a motion for partial summary judgment – while the motion to dismiss was still under advisement – did Vadnais raise the constitutional claim. See Pls.' Mem. Supp. Summ. J. 27-30. And although it is unclear whether a litigant may properly file a motion for summary judgment while a motion to dismiss is under advisement, the court need not resolve this question, as Vadnais's constitutional arguments fail on the merits.

4

argue that the charter exemptions were validly enacted under Congress's Commerce Clause and Necessary and Proper Clause authority.[5]  The court agrees.

The Commerce Clause provides that Congress may "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.  In other words, Congress may broadly regulate three categories of interstate commerce: "(1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce ...; and (3) those activities having a substantial relation to interstate commerce." United States v. Howell, 552 F.3d 709, 714 (8th Cir. 2009) (citation and internal quotation marks omitted).  "Under this power, Congress may regulate a class of purely intrastate activity if, in the aggregate, the activity has a substantial effect on interstate commerce." United States v. Dinwiddie, 76 F.3d 913, 920 (8th Cir. 1996) (citations omitted).  This is a modest inquiry, and "the question is whether Congress had any rational basis to conclude that the economic

---

[5] The Enterprises also argue that they are federal instrumentalities for purposes of tax-immunity analysis. The court need not address this argument, as it concludes that the Enterprises' charter exemptions were validly enacted. See Montgomery Cnty., Md. v. Fed. Nat'l Mortg. Ass'n, No. DKC 13-0066, 2013 WL 1832370, at *11 n.12 (D. Md. Apr. 30, 2013) ("Pursuant to Supreme Court precedent, it is unnecessary to determine whether a congressionally created entity is a federal instrumentality that qualifies for implied constitutional immunity from taxation under the Supremacy Clause where that entity is exempt pursuant to a validly enacted statute." (citations omitted)).

5

activity it chose to regulate ... substantially affects interstate commerce." Monson v. Drug Enforcement Admin., 589 F.3d 952, 964 (8th Cir. 2009) (citation omitted); see Gonzales v. Raich, 545 U.S. 1, 22 (2005) ("We need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." (citations omitted)).

Here, there is a rational basis for Congress to conclude that the regulated activity - the payment of deed transfer taxes by the Enterprises - has a substantial economic affect on interstate commerce. For example, Congress chartered Fannie Mae to

> establish secondary market facilities for residential mortgages, to provide ... stability in the secondary market for residential mortgages ... [and to] promote access to mortgage credit throughout the Nation ... by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing.

12 U.S.C. § 1716; accord Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l Mortg. Ass'n v. Raines, 534 F.3d 779, 783 (D.C. Cir. 2008) ("Fannie Mae's mission is to increase affordable housing for moderate- and low-income families. It purchases mortgages originated by other lenders and helps lenders convert their home loans into mortgage-backed securities. The goal is to provide stability and liquidity to the mortgage market. This allows mortgage lenders to provide more loans, thereby increasing

the rate of homeownership in America."). Freddie Mac was similarly chartered with the stated goal of strengthening the secondary-mortgage market. See 12 U.S.C. § 1451 Note. Likewise, the FHFA has the stated goal of "reorganizing, rehabilitating, or winding up the affairs" of Fannie Mae and Freddie Mac, and it succeeds to all of their "rights, titles, powers, and privileges." Id. § 4617(a)(2), (b)(2)(A)(i).

In sum, Congress created the Enterprises to increase the availability of affordable home mortgages, and subjecting the Enterprises to the deed transfer tax "could reduce the funds available for the [Enterprises] to purchase mortgages from primary mortgage market institutions — which, in turn, could limit the amount of mortgage credit made available by those institutions to potential home buyers." Montgomery Cnty., Md. v. Fed. Nat'l Mortg. Ass'n, No. DKC 13-0066, 2013 WL 1832370, at *14 (D. Md. Apr. 30, 2013). Based on the Enterprises' stated purpose, "Congress apparently believed that any taxation of the [Enterprises] by states and localities could interfere with their stated missions," and exempting the Enterprises "from any obligation to pay the [deed transfer taxes] *via* the Charter Exemptions represents a rational means of addressing this possibility." Id.; see City of Providence v. Fed. Nat'l Mortg. Assoc., Nos. 12-481L, 12-668L, 2013 WL 3816429, at *3-4 (D.R.I. July 24, 2013) (dismissing a similar constitutional challenge to the deed transfer tax); City of

7

Spokane, Wash. v. Fed. Nat'l Mortg. Assoc., No. CV-13-0020, 2013 WL 3288413, at *4-5 (E.D. Wash. June 28, 2013) (same). As a result, Congress had a rational basis to exempt the Enterprises from the deed transfer taxes.

Vadnais responds, however, that the deed transfer tax applies only to the transfer of immovable intrastate real property and that such a tax does not affect interstate commerce. As an initial matter, the court notes that Congress may "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." Raich, 545 U.S. at 17 (citations omitted); see Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 258 (1964) (noting that Congress may regulate intrastate activity if "it is interstate commerce that feels the pinch ... [no] matter how local the operation which applies the squeeze" (citation and internal quotation marks omitted)). Moreover, the court concludes that "[t]he effects of home sales on the interstate mortgage market [have] a sufficient connection with interstate commerce." Freeman v. San Diego Ass'n of Realtors, 322 F.3d 1133, 1143 (9th Cir. 2003) (citation omitted); cf. McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 246 (1980) ("[W]hatever stimulates or retards the volume of residential sales, or has an impact on the purchase price, [will also] affect[] the demand for financing and title insurance ... two commercial activities that on this record are shown to have

occurred in interstate commerce."). As a result, "there can be no serious doubt that participation in the secondary mortgage market to increase the availability of credit throughout the Nation constitutes interstate commerce." Montgomery Cnty., Md., 2013 WL 1832370, at *14 (internal quotation marks omitted); see Athens-Clarke Cnty. Unified Gov't v. Fed. Housing Fin. Agency, No. 5:12-CV-355, 2013 WL 2102922, at *8 n.18 (M.D. Ga. May 14, 2013) (declining to "redraw the outer boundaries of Congress's commerce power" in similar challenge to the Enterprises' charter exemption). Therefore, Vadnais's constitutional challenge fails, and denial of the Rule 59(e) motion is warranted.

**II. Leave to Amend**

The court shall provide leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend, however, is not an absolute right and "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment may be grounds to deny a motion to amend." Doe v. Cassel, 403 F.3d 986, 991 (8th Cir. 2005) (citation and internal quotation marks omitted).

And "[a]lthough a pretrial motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed after dismissal." Dorn v. State Bank of Stella, 767 F.2d 442, 443 (8th Cir. 1985) (per curiam) (citations

9

omitted). "After a complaint is dismissed, the right to amend under [Rule] 15(a) terminates." Id. (citation omitted). "Although a party may still file a motion for leave to amend and amendments should be granted liberally, such a motion [is] inappropriate if the court has clearly indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action." Hawks v. J.P. Morgan Chase Bank, 591 F.3d 1043, 1050 (8th Cir. 2010) (citation and internal quotation marks omitted). In other words, "[a] district court does not abuse its discretion in denying a plaintiff leave to amend the pleadings to change the theory of their case after the complaint has been dismissed under Rule 12(b)(6)." Id. (citations and internal quotation marks omitted).

Here, Vadnais did not seek leave to file a second amended complaint until after entry of judgment. As already discussed, the court is uncertain as to whether Vadnais raised the constitutional claims prior to dismissal and if this motion is merely a post-dismissal attempt to change the theory of the case. The court need not resolve this question, however, as even under the deferential standard of Rule 15(a), amendment is not warranted. Indeed, as already explained, Vadnais's constitutional claims are without merit, and amendment would be futile. Therefore, the motion for leave to file a second amended complaint is denied.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion to alter or amend the judgment [ECF No. 68] is denied; and

2. Plaintiffs' motion to file a second amended complaint [ECF No. 71] is denied.

Dated: July 29, 2013

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court